IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RAMONA A. MANUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08 CV 01037 |
| | ) | |
| SAGE HOSPITALITY RESOURCES, LLC,) | | The Honorable Joan H. Lefkow |
| | ) | |
| Defendant. | ) | Magistrate Judge Arlander Keys |
| | ) | |

## DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND NOTICE OF AFFIRMATIVE DEFENSES

Defendant, "Sage Hospitality Resources, LLC", (hereinafter referred to as "Defendant"), by and through its attorneys in this regard, Kevin S. Simon, Steve A. Miller, and Fisher & Phillips, LLP, hereby submits it Answer to Plaintiff's First Amended Complaint and Notice of Affirmative Defenses. As a preliminary matter, Defendant states that it never employed Plaintiff and neither owned nor operated the Hotel where Plaintiff worked. Defendant so advised Plaintiff's counsel and furnished Plaintiff's counsel with the name of Plaintiff's employer. However, as Plaintiff has refused to amend her First Amended Complaint, Defendant states as follow:

### Nature of the Case

1)    In response to Ms. Manus's complaints about being denied shifts and/or hours because of her age and because of her efforts to recover for a work injury, Defendant engaged in an increasingly hostile pattern of discrimination, harassment and retaliation against Ms. Manus that culminated in Ms. Manus's discharge.

**ANSWER:**   Defendant denies the allegations set forth in Paragraph 1 of Plaintiff's First Amended Complaint.

2)     Through its unlawful conduct, Defendant denied Ms. Manus the opportunity to do what she has done since becoming a community service officer for the Arlington Heights police Department in 1979:  work.

**ANSWER:**   Defendant denies the allegations set forth in Paragraph 2 of Plaintiff's First Amended Complaint.

3)     Ms. Manus seeks to recover for discrimination, harassment and retaliation in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 et seq. ("ADEA"), and Illinois common law.

**ANSWER:**   Defendant states that Paragraph 3 of Plaintiff's First Amended Complaint contains Plaintiff's request for relief to which no response is required.  To the extent a response is required, Defendant denies each and every allegation set forth therein and further denies that Plaintiff is entitled to any relief.

### Parties

4)     Ms. Manus, born in 1932, is a citizen of the United States and the State of Illinois.  She has consistently maintained a residence in the Northern District of Illinois since approximately 1949.

**ANSWER:**   Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 4 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

5)      Defendant Sage Hospitality Resources, LLC is a Delaware limited liability company whose principal place of business is located at 1512 Larimer St., Ste. 800, Denver, Colorado 80202   Defendant's registered service agent in Illinois is C.T. Corporation System, 208 S. LaSalle, Ste. 814, Chicago, Illinois 60604.

**ANSWER:**    Defendant admits the allegations contained in Paragraph 5 of Plaintiff's First Amended Complaint, but denies that it employed Plaintiff or owned the Hotel.

6)      In approximately November 2003, Defendant became the owner and operator of the Sheraton Chicago Northwest Hotel, located at 3400 W. Euclid Ave., Arlington Heights, Illinois 60005, where Plaintiff was employed.

**ANSWER:**    Defendant denies the allegations set forth in Paragraph 6 of Plaintiff's First Amended Complaint.

7)      Defendant is an "employer" as defined by the ADEA.

**ANSWER:**    Defendant states that Paragraph 7 of Plaintiff's First Amended Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Defendant admits that it is an "employer" for purposes of the ADEA but states that it never employed Plaintiff.

8)      Defendant is an "employer" as defined by Illinois common law.

**ANSWER:**    Defendant states that Paragraph 8 of Plaintiff's First Amended Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Defendant admits that it is an "employer" for purposes of the Illinois common law but states that it never employed Plaintiff.

**Background**

9)    Ms. Manus began working at the Sheraton Chicago Northwest hotel located at 3400 Euclid Ave., Arlington Heights, Illinois ("the hotel") on approximately February 13, 2001.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 9 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

10)    Ms. Manus was employed at the hotel from approximately February 13, 2001, until approximately July 18, 2006, when she was unlawfully terminated by Defendant.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 10 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

11)    Throughout Ms. Manus's employment at the hotel, she met or exceeded her employers' expectations for performance.  She received numerous awards and commendations for providing high quality customer service.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 11 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

12)      Additionally, throughout Ms. Manus's employment at the hotel, she maintained a residence at a condominium in Palatine, Illinois – approximately one mile from the hotel.   Although Ms. Manus had a house in Nevada, she lived in Palatine, Illinois, filed income tax returns in Illinois, and was at all times during her employment was [sic] a resident of Illinois.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 12 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

13)      Prior to working for the hotel, Ms. Manus worked for American Airlines from approximately 1989 to approximately 1997.   Ms. Manus worked in service positions the entire time she worked for American Airlines, first as a clerk and then in management as a crew chief.    As a benefit of having worked for American Airlines, Ms. Manus receives special flying privileges enabling her to fly free for life.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 13 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

14)      Prior to working for American Airlines, Ms. Manus worked for the Arlington Heights Police Department from approximately 1979 to approximately 1997. Ms. Manus worked as a community service officer for the Police Department and helped protect and serve the citizens of Arlington Heights.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 14 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

15)    At Arlington Heights Police Department, American Airlines and other places of employment, Ms. Manus received numerous awards and recognition for her customer service.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 15 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

16)    During Ms. Manus's employment at the hotel, she occasionally would visit her home in Nevada, taking advantage of her flying privileges with American Airlines.  But Ms. Manus made clear to her supervisors and managers that she was always available to work.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 16 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

17)    When Ms. Manus began working at the hotel, it was owned by Starwood. In approximately 2002, the hotel was acquired by Merritt Hospitality, LLC.   In approximately November 2003, the hotel was acquired by Defendant

**ANSWER:**    Defendant denies that it owned or operated the Hotel.  Defendant further states that it did not employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the remaining allegations contained in Paragraph 17 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

18)    Throughout most of Ms. Manus's employment at the hotel, the hotel's HR Specialist was Jenny O'Brien.  HR Specialist O'Brien was originally hired by Merritt Hospitality, LLC, but continued to work as Defendant's human resources representative at the hotel after it was acquired by Defendant.  During Ms. Manus's employment with Defendant, HR Specialist O'Brien was responsible for all human resources functions at the hotel (e.g., human resources role in hiring, firing, discipline, compensation, union grievances, etc.).

**ANSWER:**    Defendant states that it has never owned the Hotel.    Upon information and belief, Defendant admits that Jenny O'Brien reportedly has served as Director of Human Resources at the Hotel since at least May 17, 2005, and that she is responsible for overseeing the human resources functions at the Hotel.  Defendant states that it is without sufficient information or knowledge to admit or deny the remaining allegations contained in Paragraph 18 of Plaintiff's First Amended Complaint and, therefore, denies the allegations on that basis and leaves Plaintiff to her proof.

19)    Initially, Ms. Manus worked as a hostess in the hotel's VIP lounge.  In that position, her job included providing customer service for the hotel's most important customers (arranging for transportation, dinner reservations, activities, etc.).

**ANSWER:**     Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 19 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

20)     After the attacks on September 11, 2001, the travel industry suffered and the hotel no longer needed a VIP lounge hostess.

**ANSWER:**     Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 20 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

21)     In. approximately October 2001, Ms. Manus was transferred to a full-time hostess position at the hotel's restaurant, Delaney Murphy Steakhouse.  At that time, Ms. Manus was within six months of turning seventy years old.  Although Ms. Manus was a full-time employee, there were few hours available for her to work in October and November 2001 because of the downturn in the travel industry.

**ANSWER:**     Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 21 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

22)     During the time Ms. Manus worked at the hotel's restaurant, Vicki Lain was the restaurant's Manager.  Throughout Ms. Manus's employment, Restaurant Manager Lain was responsible for scheduling and supervising all of the restaurant's

workers, (bussers, servers, hostesses, kitchen staff, etc.).    Manager Lain was approximately thirty-three to thirty-five years old when she became Restaurant Manager.

**ANSWER:**    Defendant states, upon information and belief, that Vikki Lain reportedly served as the Manager of the Delaney Murphy Steakhouse Restaurant in the Hotel from at least May 17, 2005 through the termination of Plaintiff's employment at the Hotel on July 18, 2006.  Defendant further states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the remaining allegations contained in Paragraph 22 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

23)    After September 11, 2001, Ms. Manus was the only hostess at the hotel's restaurant.  However, beginning in approximately February or March 2002, Ms. Vesula Makelavich also began working as a hostess at the hotel's restaurant.  Ms. Makelavich also was hired as a full-time employee and was approximately 21 or 22 years old when she began working as a hostess at the hotel restaurant.  Ms. Mikalevah [sic] voluntarily resigned from employment at the hotel in approximately 2003, but was rehired by Defendant in approximately July 2006.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 23 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

24)    In approximately 2003, shortly after Ms. Makelavich resigned, another hostess was hired to work at the hotel's restaurant, Ms. Diana Gonzales.  Ms. Gonzales

also was hired as a full-time employee and was approximately 18 or 19 years old when she began working as a hostess at the hotel restaurant.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 24 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

25)    Ms. Manus was the only hostess who worked at hotel restaurant who was over forty years old.  For the vast majority of the time Ms. Manus worked at the hotel restaurant, she was seventy years old or older.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 25 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

26)    In approximately early 2005, HR Specialist O'Brien hired Missy Abebaw to work as the restaurant's Assistant Manager.  Assistant Manager Abebaw was between approximately twenty-seven and thirty-three years old when she became the restaurant's Assistant Manager.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 26 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

27)    Towards the end of Ms. Manus's employment, Defendant employed Kevin Rabelar as the Food & Beverage Manager.  Food & Beverage Manager Rabelar served as Restaurant Manager Lain's supervisor.

**ANSWER:**    Defendant admits that at the time of Ms. Manus's termination Kevin Rabeler reportedly served as the Hotel's Food & Beverage Manager.  Defendant further states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the remaining allegations contained in Paragraph 27 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

28)    Throughout Ms. Manus's employment at the hotel, the hotel also had a General Manager.  Towards the end of Ms. Manus's employment, Frank Leone was employed by Defendant as the hotel's General Manager.  General Manager Leone was the person who informed Ms. Manus her employment with Defendant was terminated.

**ANSWER:**    Defendant admits that at the time of Ms. Manus's termination Frank Leone reportedly held the title of Hotel General Manager.  Defendant further states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the remaining allegations contained in Paragraph 28 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

## Age Discrimination, Harassment And Retaliation By Defendant

29)    Pursuant to Defendant's collective bargaining agreement, Ms. Manus was entitled to receive the first forty hours of work available for any of several positions (including the restaurant hostess position) as a result of her seniority working at the hotel.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 29 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

30)    Additionally, pursuant to Defendant's collective bargaining agreement, Ms. Manus should have been scheduled at least thirty-two hours per week as a full-time employee.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 30 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

31)    Rather than assign Ms. Manus the hours and/or shifts to which she was entitled pursuant to the hotel's collective bargaining agreement, the hotel managers denied Ms. Manus hours and/or shifts because of her age.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 31 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

32)    Specifically, throughout 2002, 2003, 2004, 2005 and 2006, the hotel engaged in a continuing practice of assigning Ms. Makelavich and/or Ms. Gonzales hours and/or shifts that should have been assigned to Ms. Manus.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or

deny the allegations contained in Paragraph 32 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

33)    When Ms. Manus made inquiries about being denied hours and/or shifts, Restaurant Manager Lain and HR Specialist O'Brien repeatedly and falsely informed Ms. Manus that no work was available.  In reality, however, hours and/or shifts were assigned to Ms. Makelavich and/or Ms. Gonzalez instead of Ms. Manus.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 33 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

34)    For example, in approximately February or March 2002, Ms. Manus discussed with Restaurant Manager Lain the fact that Ms. Makelavich (the newly hired hostess), was being given hours instead of Ms. Manus.  In response, Restaurant Manager Lain implicitly threatened Ms. Manus's continued employment by proclaiming, "we can hire as many hostesses as we please," or words to that effect.  On another occasion shortly thereafter when Ms. Manus raised the issue, Restaurant Manager Lain said "I can hire ten hostesses if I want" or words to that effect.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 34 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

35)    During one conversation between Ms. Manus and Restaurant Manager Lain in approximately 2002, Ms. Manus mentioned to Restaurant Manager Lain that she

could provoke a lawsuit by ignoring union contracts and federal laws and that she intended to raise the matter with the company. In response, Restaurant Manager Lain said she had checked with higher-ups in the company and "the company does not give a shit what you do and neither do I – you'll be dead before you collect anything" or words to that effect.

      **ANSWER:**   Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 35 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

      36)   Ms. Manus filed several grievances with her union challenging Defendant's continuing practice of denying her hours and/or shifts because of her age. None of her grievances were successful. Rather than remedy the discrimination Ms. Manus was experiencing, HR Specialist O'Brien and Restaurant Manager Lain retaliated against her.

      **ANSWER:**   Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 36 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

      37)   Beginning in approximately 2003, Ms. Manus was subjected to an increasingly hostile pattern of discrimination, harassment and retaliation, as described in this Complaint. For example, the hotel's managers retaliated against Ms. Manus by, among other things, continuing to deny Ms. Manus hours and/or shifts and treating her differently in other ways.

**ANSWER:**     Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 37 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

38)     Additionally, Ms. Manus was subjected to numerous harassing and discriminatory remarks based on her age.  For example, in approximately 2002 or 2003, Restaurant Manager Lain asked Ms. Manus, "why is an old lady like you working?" or words to that effect  Additionally, in approximately 2003, Restaurant Manager Lain told Ms. Manus, "I won't work when I'm your age," or similar words.

**ANSWER:**     Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 38 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

### Ms. Manus's Workers' Compensation Claim

39)     On approximately March 27, 2004, Ms. Manus was injured at work through no fault of her own.  Ms. Manus slipped on avocado dip a server had spilled.

**ANSWER:**     Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 39 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

40)     As a result of slipping, Ms. Manus broke bones in her foot, severely twisted her ankle, hurt her knee and tore blood vessels in her leg.  Defendant sent Ms. Manus to the hospital in a taxi-cab instead of an ambulance.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 40 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

41)    As a result of her injury, Ms. Manus was unable to work from approximately late March 2004 through approximately June 2005.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 41 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

42)    During the time Ms. Manus was off work, Defendant stopped paying Ms. Manus's health insurance premiums.

**ANSWER:**    Defendant denies the allegations set forth in Paragraph 42 of Plaintiff's First Amended Complaint.

43)    Ms. Manus attempted to exercise her right to recover for her work injury under the Illinois Workers' Compensation Act.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 43 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

44)    Initially, HR Specialist O'Brien refused to submit paperwork identifying Ms. Manus's injury as work-related and/or subject to the Illinois Workers' Compensation Act.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 44 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

45)    Eventually, Ms. Manus filed a claim for benefits under the Illinois Workers' Compensation Act.  But Defendant refused to authorize payment of Ms. Manus's benefits within the required time period.

**ANSWER:**    Defendant denies that "Defendant refused to authorize payment of Ms. Manus's benefits within the required time period."  Defendant further states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the remaining allegations contained in Paragraph 45 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

46)    Instead, Defendant contested Ms. Manus's medical bills and required her to go to an unlicensed medical care provider (HR Specialist O'Brien even made appointments for Ms. Manus with this unlicensed doctor without consulting Ms. Manus first).  The courses of treatment recommended by the physician Ms. O'Brien chose lengthened the time it took Ms. Manus to heal and return to work.

**ANSWER:**    Defendant denies that "Defendant contested Ms. Manus's medical bills and required her to go to an unlicensed medical care provider."  Defendant further states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the remaining allegations

contained in Paragraph 46 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

47)     Ms. Manus ultimately resolved her claim for benefits under the Illinois Workers' Compensation Act with Defendant in approximately early 2006.

**ANSWER:**     Defendant denies the allegations set forth in Paragraph 47 of Plaintiff's First Amended Complaint.

48)     HR Specialist O'Brien also refused to submit paperwork identifying other employees' injuries as work-related.  Instead, she would require injured employees to [sic].

**ANSWER:**     Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 48 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

49)     As a result of Ms. Manus exercising her rights under the Illinois Workers' Compensation Act, Defendant incurred additional financial costs and had to complete additional administrative tasks, including substantial paperwork.

**ANSWER:**     Defendant denies the allegations set forth in Paragraph 49 of Plaintiff's First Amended Complaint.

50)     Additionally, as a result of Defendant contesting Ms. Manus's claim for benefits under the Illinois Workers' Compensation Act, Ms. Manus incurred expenses and attorneys fees.

**ANSWER:**     Defendant denies that it contested "Ms. Manus's claim for benefits."  Defendant further states that it did not own or operate the Hotel or employ

Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the remaining allegations contained in Paragraph 50 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

51)    Upon information and belief, individuals who worked at Defendant's corporate headquarters in Denver were aware of Ms. Manus's attempts to recover benefits for her workplace injury under the Illinois Workers' Compensation Act.

**ANSWER:**    Defendant denies the allegations set forth in Paragraph 51 of Plaintiff's First Amended Complaint.

**Continuing Discrimination, Harassment And Retaliation**

52)    When Ms. Manus returned to work after her work injury, Ms. Manus continued to assert her workplace rights – including her right to be free from age discrimination.   In response, Defendant continued its previous, ongoing pattern of discrimination, retaliation and harassment against Ms. Manus.

**ANSWER:**    Defendant denies that it engaged in any "ongoing pattern of discrimination, retaliation and harassment against Ms. Manus."  Defendant further states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the remaining allegations contained in Paragraph 52 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

53)    Specifically, Defendant continued to deny Ms. Manus hours and for shifts and, instead, assign them to the busperson (who Ms. Manus trained) and Ms. Gonzales. This practice continued from when Ms. Manus returned from her work injury leave until her termination of employment

**ANSWER:**    Defendant denies that Defendant "continued to deny Ms. Manus hours and for shifts and, instead, assign them to the busperson (who Ms. Manus trained) and Ms. Gonzales." Defendant further states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the remaining allegations contained in Paragraph 53 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

54)    Ms. Manus again filed grievances with her union challenging Defendant's ongoing practice of denying her hours and/or shifts because of her age. But Ms. Manus continued to experience age discrimination, harassment and retaliation.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 54 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

55)    For example, during the week beginning on Monday, February 26, 2006, Ms. Gonzales was scheduled to work 33 hours, but Ms. Manus was only scheduled to work 25 hours.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 55 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

56)    Additionally, Ms. Manus continued to hear discriminatory references to her age, as she had before her injury. For example, in approximately 2005, Ms. Abebaw told Ms. Manus, "I know I'm not gonna be working when I'm 70 years old," or words to

that effect.  These comments were typical of many Ms. Manus frequently heard from Defendants [sic] managers throughout her employment, including from HR Specialist O'Brien and Restaurant Manager Lain.  Ms. Manus found these and similar remarks abusive and insulting.  Fellow employees were often sympathetic with Ms. Manus and asked her how she could tolerate such abuse and harassment.

**ANSWER:**   Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 56 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

57)    Like other managers, Assistant Manager Abebaw also threatened Ms. Manus with termination.  Specifically, Assistant Manager Abebaw mentioned she was hired by Sage as a "headhunter" during a conversation with Ms. Manus and others [sic] employees in approximately 2005 (near the time Assistant Manager Abebaw was hired). Ms. Manus understood Ms. Manus [sic] to mean that she was hired to fire specific individuals.  During the conversation, Assistant Manager Abebaw bragged that she could fire anybody if she wanted that person fired.  She said she would "write" about the employee, and keep writing and finally turn the employee into management.  She bragged she could do this even if the employee did nothing wrong and laughed about how she had fired two employees in a previous job this way.

**ANSWER:**   Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 57 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

58)    In an attempt to coerce Ms. Manus into quitting, Restaurant Manager Lain and/or Assistant Manager Abebaw scheduled Ms. Manus to work fourteen days in a row, but still did not schedule her for enough hours to enable to [sic] her to be eligible for health insurance benefits (32 hours/week).  Other workers were not scheduled to work as many days in a row.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 58 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

59)    As time passed, the discrimination, harassment and retaliation Ms. Manus experienced grew more severe.  For example, Defendant continued to subject Ms. Manus to differential treatment through the form of abuse, swearing and inappropriate remarks based on her age.  Ms. Manus was not aware of other employees being treated similarly.

**ANSWER:**    Defendant denies that Defendant "continued to subject Ms. Manus to differential treatment through the form of abuse, swearing and inappropriate remarks based on her age."  Defendant further states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the remaining allegations contained in Paragraph 59 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

60)    Specifically, Defendant's managers also repeatedly swore at Ms. Manus, particularly when she questioned any of her managers about being denied hours or being assigned additional work responsibilities.  For example, Restaurant Manager Lain repeatedly would tell Ms. Manus to "get her old ass out" of her office.  This happened on

many occasions, including when Ms. Manus went to discuss work issues with Restaurant Manager Lain (e.g., after doing a wine inventory in approximately 2005).

**ANSWER:**    Defendant denies that its "managers also repeatedly swore at Ms. Manus, particularly when she questioned any of her managers about being denied hours or being assigned additional work responsibilities."   Defendant further states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the remaining allegations contained in Paragraph 60 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

61)    Aware of Ms. Manus's previous complaints of age discrimination, Food & Beverage Manager Rabelar (Restaurant Manager Lain's direct supervisor), attempted to intimidate Ms. Manus the very first day he met her in approximately November 2005. Specifically, Mr. Rabelar threatened Ms. Manus by telling her "I've been hired by this company as a headhunter" and "I am the god damn manager of this hotel and I will run this god damn hotel any way I choose" and "you are not the boss here – do you understand what I am trying to tell you?," or words to that effect.  Ms. Manus understood Mr. Rabelar to mean he was hired to fire certain people – and specifically Ms. Manus. Ms. Manus told Mr. Rabelar he was "out of line" and insisted on having a union representative present for any discipline (as she understood was her right).

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 61 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

62)    Ms. Manus also was excluded from informal gatherings between employees and managers at the restaurant and subjected to different working conditions because of her age.  For example, many employees would take breaks during their shifts and would eat complimentary meals prepared by the kitchen staff specifically for them (e.g., steak, chicken, shrimp, fish, etc.).  Often times, restaurant management (including General Manager Leone and Food & Beverage Manager Rabelar) would eat with employees during these important socializing opportunities during which restaurant business was discussed.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 62 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

63)    Ms. Manus rarely if ever was afforded breaks during her shifts, was not offered complimentary meals by the kitchen staff, and was not offered the opportunity to dine with restaurant management and discuss restaurant business in such an informal atmosphere.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 63 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

64)    As another form of discrimination, harassment and retaliation, Restaurant Manager Lain would interfere with Ms. Manus's ability to answer phone reservations either by redirecting phones to different areas of the hotel or arranging for "fake"

reservations calls.   For, example, on approximately March 15, 2006, Ms. Manus answered approximately 15 prank phone calls.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 64 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

65)    Additionally, Restaurant Manager Lain and Assistant Manager Abebaw repeatedly arranged for their friends to dine at the restaurant for free based on false complaints against Ms. Manus.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 65 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

66)    Ms. Manus also continued to experience threats of termination.   For example, at one point, in approximately March 2006, Ms. Manus was informed by hotel management that she could lose her job because she was not working enough hours. After hearing this, Ms. Manus met with her union president, Leo Panatsis, who informed her that she was a full-time employee.  When Ms. Manus asked HR Specialist O'Brien to check her records about this issue at a grievance meeting in approximately March 2006, HR Specialist O'Brien told Ms. Manus "all of your records were lost," or words to that effect.   This was the second time HR Specialist O'Brien told Ms. Manus records that should have been in her personnel file were lost.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 66 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

67)    As another threat, on approximately March 13, 2006, Restaurant Manager Lain warned Ms. Manus that she could be fired if she "badged in early," or words to that effect.  Shortly thereafter, Restaurant Manager Lain warned Ms. Manus that she could be fired if she "badged in late," or words to that effect.  Other employees who swiped their badges a little early or a little late (effectively reporting to work and "clocking in") were not disciplined or threatened with discipline in the same way as Ms. Manus.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 67 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

68)    Defendant also discriminated against Ms. Manus by requiring her to perform extra job duties when she was scheduled to work.  Specifically, Ms. Manus was frequently required to perform the duties of the bus-person (clearing tables, setting up tables, etc.).  For example, on an evening in mid-March 2006, Ms. Manus was required to perform hostess and bussing duties for approximately 106 tables. Ms. Manus was assigned these (and other) responsibilities despite the fact that her only duties were to "meet, greet and seat" restaurant patrons.

**ANSWER:**    Defendant denies that it "discriminated against Ms. Manus by requiring her to perform extra job duties when she was scheduled to work."  Defendant

further states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the remaining allegations contained in Paragraph 68 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

69)    Ms. Manus thought Defendant was harassing her and retaliating against her in a designed effort to get her to quit. She had numerous conversations about this and the way in which she was treated with her coworkers and managers.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 69 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

70)    In the summer of 2006, Defendant rehired Ms. Makelavich as a hostess at the hotel's restaurant. Restaurant Manager Lain flaunted Ms. Makelavich's hiring to Ms. Manus in approximately June 2006.

**ANSWER:**    Defendant denies that it "rehired Ms. Makelavich as a hostess at the hotel's restaurant." Defendant further states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the remaining allegations contained in Paragraph 70 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

71)    Additionally, around June or July 2006, HR Specialist O'Brien also informed Ms. Manus that the restaurant "had plenty of work," or words to that effect and that Ms. Makelavich might be coming back to work. Defendant, however, continued to be [sic] deny Ms. Manus hours and/or shifts.

**ANSWER:**   Defendant denies that it "continued to be [sic] deny Ms. Manus hours and/or shifts."  Defendant further states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the remaining allegations contained in Paragraph 71 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

72)     Additionally, Ms. Manus was asked to assist Assistant Manager Abebaw in falsifying information regarding a customer's injury in the restaurant on approximately July 13, 2006.  Shortly after a customer wearing cowboy boots slipped on recently polished floors, Assistant Manager Abebaw approached Ms. Manus and stated the customer was intoxicated.  Ms. Manus, who greeted and seated the customer, told Assistant Manager Abebaw that the customer did not seem or smell intoxicated. Assistant Manager Abebaw became furious and demanded that Ms. Manus go find out his name and room number.

**ANSWER:**   Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 72 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

73)     Ms. Manus was left with no options:  she could not assist her supervisor in falsifying records without risking termination, and she could not disobey her supervisor without risking termination.

**ANSWER:**   Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or

deny the allegations contained in Paragraph 73 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

74)    Later that evening, Assistant Manager Abebaw called Ms. Manus back to her office.  Only Assistant Manager Abebaw, Ms. Manus and "Nash" (the Chef) were present.  In front of Nash, Assistant Manager Abebaw told Ms. Manus "I don't like your attitude" or words to that effect.  In response, Ms. Manus objected to being asked to falsely document the patron's injury.  Ms. Manus said it was making her sick and she needed to go home.  In response, Assistant Manager Abebaw became angry and twice told Ms. Manus to "get your old ass out of here," or words to that effect, yelling and waiving her hands as if to shoo Ms. Manus away dismissively.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 74 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

### Ms. Manus's Termination

75)    On approximately July 18 – less than a week after Assistant Manager Abebaw told Ms. Manus to get her "old ass" out of her office – Ms. Manus arrived at work before her shift was scheduled to start.  Initially, General Manager Leone (the hotel's most senior on-site manager) asked if he could meet with Ms. Manus.  She mentioned she was not on the clock and that she needed to go to the doctor and would not be reporting to work that day.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or

deny the allegations contained in Paragraph 75 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

76)    Almost simultaneously, HR Specialist O'Brien and Food & Beverage Manager Rabelar approached General Manager Leone.  At this point, Ms. Manus suspected she was about to be fired.  Mr. Leone mentioned that a union representative was present, but Ms. Manus indicated that she wanted to have a different union representative present and asked to meet the next day.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 76 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

77)    General Manager Leone told Ms. Manus that she did not need to return to work because her employment was terminated.  General Manager Leone also threatened Ms. Manus with arrest if she stepped foot on the hotel's property after her termination.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 77 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

78)    Ms. Manus attempted to challenge her termination by filing a grievance with her union.  She was not notified of the grievance meeting by the union or Defendant. When she did not appear at her grievance meeting, Defendant declined to reschedule the meeting.

**ANSWER:**    Defendant admits that it did not notify Plaintiff of any grievance meeting.  Defendant denies that it "declined to reschedule the meeting."  Defendant further states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the remaining allegations contained in Paragraph 78 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

79)    Additionally, HR Specialist O'Brien wrote a memorandum that falsified events (as if to "paper the file").   Specifically, HR Specialist O'Brien wrote in a memorandum dated August 4, 006 [sic], that Ms. Manus called her union representative on the day the grievance was scheduled to cancel the appointment.  Ms. Manus never called her union representative to cancel the grievance meeting because she was never informed when that meeting would take place.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 79 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

80)    Individuals who worked at Defendant's corporate headquarters in Denver were aware of Ms. Manus's complaints of age discrimination prior to her termination of employment.  Ms. Manus sent letters to Defendant's corporate headquarters describing the discrimination and retaliation she was experiencing repeatedly throughout her employment

**ANSWER:**    Defendant denies the allegations set forth in Paragraph 80 of Plaintiff's First Amended Complaint.

81)    Defendant failed to take steps designed to remedy or correct Defendant's discriminatory, harassing and retaliatory practices in response to Ms. Manus's repeated complaints about age discrimination.    Instead, Defendant continued unlawfully discriminating against, harassing and retaliating against Ms. Manus by discharging her.

**ANSWER:**    Defendant denies the allegations set forth in Paragraph 81 of Plaintiff's First Amended Complaint.

82)    After Ms. Manus's termination of employment, Defendant's managers continued discriminating against, harassing and retaliating against her by contesting her claim for unemployment benefits through false statements that she was "disrespectful to a supervisor."  Despite Defendant's attempts, Ms. Manus was able to obtain unemployment compensation benefits.

**ANSWER:**    Defendant denies that its "managers continued discriminating against, harassing and retaliating against her by contesting her claim for unemployment benefits through false statements that she was 'disrespectful to a supervisor.'"  Defendant further states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the remaining allegations contained in Paragraph 82 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

83)    Ms. Manus believes that shortly after her termination, Defendant scheduled both Ms. Makelavich and Ms. Gonzales with enough hours to obtain health insurance benefits (32 hours/week).

**ANSWER:**    Defendant denies the allegations set forth in Paragraph 83 of Plaintiff's First Amended Complaint.

84)    The restaurant did employ two servers older than forty years of age (Judy Richter and Rosie Mandolini).    To Ms. Manus's knowledge, Ms. Richter and Ms. Mandolini never complained about discriminatory treatment because of their age and never attempted to recover for a work injury under the Illinois Workers' Compensation Act during their employment with Defendant.

**ANSWER:**    Defendant denies that it employed Judy Richter and Rosie Mandolin.    Defendant further states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the remaining allegations contained in Paragraph 84 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

### Jurisdiction and Venue

85)    Ms.    Manus    alleges    claims    against    Defendant    under    the    Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 et seq. ("ADEA"), and Illinois common law.

**ANSWER:**    Defendant admits that Plaintiff is asserting claims under the ADEA and Illinois Common law.    To the extent Paragraph 85 of the First Amended Complaint contains any express or implicit allegations of wrongdoing, Defendant denies all such allegations.

86)    This Court has jurisdiction over Ms. Manus's ADEA claims pursuant to 28 U.S.C. §§ 1331 and 1343 and 29 U.S.C. § 626(b).

**ANSWER:**    Defendant states that Paragraph 86 of Plaintiff's First Amended Complaint contains legal conclusions to which no response is required.    To the extent a response is required, Defendant admits that this Court has jurisdiction over claims arising

under the ADEA.  To the extent Paragraph 86 contains any express or implicit allegations of wrongdoing, Defendant denies all such allegations.

87)    This Court has supplemental jurisdiction of Ms. Manus's Illinois common law claims pursuant to 28 U.S.C. § 1367(a).

**ANSWER:**    Defendant states that Paragraph 87 of Plaintiff's First Amended Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Defendant admits that this Court has supplemental jurisdiction over Plaintiff's Illinois common law claim.  To the extent Paragraph 87 contains any express or implicit allegations of wrongdoing, Defendant denies all such allegations.

88)    Venue is proper in this judicial district under 29 U.S.C. § 1392(b)(2) because the alleged unlawful conduct occurred in this judicial district

**ANSWER:**    Defendant states that Paragraph 88 of Plaintiff's First Amended Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Defendant admits that venue is proper in this judicial district as the alleged events occurred within this judicial district.  To the extent Paragraph 88 contains any express or implicit allegations of wrongdoing, Defendant denies all such allegations.

### Exhaustion Of Administrative Filing Requirement

89)    Ms. Manus filed an EEOC charge against Defendant on March, 28, 2007. A copy of Ms. Manus's EEOC charge is attached as Exhibit A.

**ANSWER:**    Defendant admits that Plaintiff filed an EEOC Charge on March 28, 2007, and that a copy of her EEOC Charge is purportedly attached to Plaintiff's First Amended Complaint as Exhibit A.   Defendant denies each and every remaining

allegation set forth in Paragraph 89 of Plaintiff's First Amended Complaint, and further denies the allegations of wrongdoing contained in Plaintiff's EEOC Charge.

90)     The EEOC issued a Notice of Right to Sue on November 21, 2007.  Ms. Manus did not receive the copy of the Notice of Right to Sue sent to her via certified mail.

**ANSWER:**   Upon information and belief, Defendant states that the EEOC issued Plaintiff a Notice of Right to Sue in November of 2007.  Defendant further states that it is without sufficient information or knowledge to admit or deny the remaining allegations contained in Paragraph 90 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

91)     Thus, the EEOC mailed Ms. Manus another copy the previously issued Notice of Right to Sue on December 18, 2007.   Ms. Manus received this copy at some point after December 25, 2007.  A copy of the Notice of Right to Sue that Ms. Manus received and the attached cover letter is attached as Exhibit B.

**ANSWER:**   Upon information and belief, Defendant states that the EEOC sent Plaintiff another copy of the Notice of Right to Sue via letter dated December 18, 2007. Defendant further states that Exhibit B to Plaintiff's First Amended Complaint purports to be a copy of the EEOC's letter dated December 18, 2007.  Defendant further states that it is without sufficient information or knowledge to admit or deny the remaining allegations contained in Paragraph 91 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

92)     Ms. Manus filed her original pro se Complaint on February 20, 2008, within ninety days of receiving the Notice of Right to Sue.

**ANSWER:**    Defendant admits that Plaintiff filed her *pro se* Complaint on February 20, 2008.  Defendant further states that it is without sufficient information or knowledge to admit or deny the remaining allegations contained in Paragraph 92 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

### Defendant's Conduct Constitutes A Continuing Violation

93)    The discrimination Ms. Manus experienced continued from approximately 2002 until after she was terminated and the harassment and retaliation Ms. Manus experienced continued from approximately 2003 until after she was terminated. Defendant's unlawful pattern of harassment, discrimination and retaliation was comprised of a series of connected acts and events, each of which alone may not have constituted a violation of the ADEA.

**ANSWER:**    Defendant states that Paragraph 93 of Plaintiff's First Amended Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations set forth therein.

94)    The unlawful employment practices Ms. Manus challenges (other than the termination of her employment) constitute continuing unlawful employment practices and not discrete acts.

**ANSWER:**    Defendant states that Paragraph 94 of Plaintiff's First Amended Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations set forth therein.

**Ms. Manus Suffered Injury As A Result Of Defendant's Conduct**

95)    As a result of Defendant's unlawful conduct, Ms. Manus was denied equal employment opportunities because of her age, because she opposed age discrimination and/or because she sought to exercise her rights to recover for a workplace injury.

**ANSWER:**    Defendant states that Paragraph 95 of Plaintiff's First Amended Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations set forth therein.

96)    Additionally, as a result of being denied hours and/or shifts, Ms. Manus became ineligible for health insurance benefits and also lost pension contributions.

**ANSWER:**    Defendant states that it did not own or operate the Hotel or employ Plaintiff and, accordingly, it is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 96 of Plaintiff's First Amended Complaint and, therefore, denies the allegations.

97)    Further, as a result of Defendant's unlawful conduct, Ms. Manus also lost past and future wages and other benefits.  She also suffered embarrassment, humiliation, loss of dignity, and her career was irreparably damaged as a result of Defendant's unlawful conduct

**ANSWER:**    Defendant denies the allegations set forth in Paragraph 97 of Plaintiff's First Amended Complaint.

98)    As a result of Defendant's unlawful conduct, Ms. Manus also incurred expenses, including but not limited to attorneys' fees and costs.

**ANSWER:**    Defendant denies the allegations set forth in Paragraph 98 of Plaintiff's First Amended Complaint.

<u>COUNT I</u>
<u>Discrimination In Violation Of The ADEA - Denial of Hours/Shifts</u>

99)    Ms. Manus repleads the allegations contained in all paragraphs of this complaint, and incorporates them by reference as if fully set forth herein.

**ANSWER:**    Defendant incorporates by reference its answers to all preceding Paragraphs of Plaintiff's First Amended Complaint, as if fully set forth herein.

100)    By denying Ms. Manus hours and/or shifts because of her age, Defendant discriminated against her with respect to terms, conditions and privileges of employment in violation of 29 U.S.C. § 623(a)(1).

**ANSWER:**    Defendant states that Paragraph 100 of Plaintiff's First Amended Complaint contains legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth therein.

101)    By denying Ms. Manus hours and/or shifts because of her age, Defendant limited, segregated or classified her in a way that deprived her or tended to deprive her of employment opportunities in violation of 29 U.S.C. § 623(a)(2).

**ANSWER:**    Defendant states that Paragraph 101 of Plaintiff's First Amended Complaint contains legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth therein.

102)    By denying Ms. Manus hours and/ or shifts because of her age, Defendant limited, segregated or classified her in way that adversely affected her status as an employee in violation of 29 U.S.C. § 623(a)(2).

**ANSWER:**    Defendant states that Paragraph 102 of Plaintiff's First Amended Complaint contains legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth therein.

103)    Ms. Manus's age was a motivating factor in Defendant's conduct towards her, including Defendant's managers' decisions to deny Ms. Manus hours and/or shifts.

**ANSWER:**    Defendant denies the allegations set forth in Paragraph 103 of Plaintiff's First Amended Complaint.

104)    As a result of Defendant's actions, Ms. Manus sustained lost past and future wages and benefits, damage to her career, emotional distress (including, without limitation, humiliation, embarrassment and loss of dignity), attorney fees, arid related costs.

**ANSWER:**    Defendant denies the allegations set forth in Paragraph 104 of Plaintiff's First Amended Complaint.

105)    The actions of Defendant were intentional and/or done maliciously or with reckless indifference to Ms. Manus's rights.

**ANSWER:**    Defendant denies the allegations set forth in Paragraph 105 of Plaintiff's First Amended Complaint.

Defendant states that the remainder of Count I, of Plaintiff's First Amended Complaint, contains Plaintiff's request for relief to which no response is required.  To the extent a response is required, Defendant denies the allegations set forth therein and further denies that Plaintiff is entitled to any relief.

## COUNT II
## Discrimination In Violation Of The ADEA – Discharge

106)    Ms. Manus repleads the allegations contained in all paragraphs of this complaint, and incorporates them by reference as if fully set forth herein.

**ANSWER:**    Defendant incorporates by reference its answers to all preceding Paragraphs of Plaintiff's First Amended Complaint, as if fully set forth herein.

107)    By discharging Ms. Manus because of her age, Defendant discriminated against her with respect to terms, conditions and privileges of employment in violation of 29 U.S.C. § 623(a)(1).

**ANSWER:**    Defendant states that Paragraph 107 of Plaintiff's First Amended Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations set forth therein.

108)    By discharging Ms. Manus because of her age, Defendant limited, segregated or classified her in a way that deprived her or tended to deprive her of employment opportunities in violation of 29 U.S.C. § 623(a)(2).

**ANSWER:**    Defendant states that Paragraph 108 of Plaintiff's First Amended Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations set forth therein.

109)    By discharging Ms. Manus because of her age, Defendant limited, segregated or classified her in way that adversely affected her status as an employee in violation of 29 U.S.C. § 623(a)(2).

**ANSWER:**    Defendant states that Paragraph 109 of Plaintiff's First Amended Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations set forth therein.

110)    Ms. Manus's age was a motivating factor in Defendant's conduct towards her, including Defendant's managers' decision to engage in conduct which led to Ms. Manus's discharge and/or Defendant's managers' decision to discharge Ms. Manus.

**ANSWER:**    Defendant denies the allegations set forth in Paragraph 110 of Plaintiff's First Amended Complaint.

111)    As a result of Defendant's actions, Ms. Manus sustained lost past and future wages and benefits, damage to her career, emotional distress (including, without limitation, humiliation, embarrassment and loss of dignity), attorney fees' and related costs.

**ANSWER:**    Defendant denies the allegations set forth in Paragraph 111 of Plaintiff's First Amended Complaint.

112)    The actions of Defendant were intentional and/or done maliciously or with reckless indifference to Ms. Manus's rights.

**ANSWER:**    Defendant denies the allegations set forth in Paragraph 112 of Plaintiff's First Amended Complaint.

Defendant states that the remainder of Count II, of Plaintiff's First Amended Complaint, contains Plaintiff's request for relief to which no response is required.  To the extent a response is required, Defendant denies the allegations set forth therein and further denies that Plaintiff is entitled to any relief.

### COUNT III
### Harassing Conduct In Violation Of The ADEA

113)    Ms. Manus repleads the allegations contained in all paragraphs of this complaint, and incorporates them by reference as if fully set forth herein.

**ANSWER:**    Defendant incorporates by reference its answers to all preceding Paragraphs of Plaintiff's First Amended Complaint, as if fully set forth herein.

114)    By engaging in harassing conduct towards Ms. Manus because of her age, Defendant discriminated against her with respect to terms, conditions and privileges of employment in violation of 29 U.S.C. § 623(a)(1).

**ANSWER:**    Defendant states that Paragraph 114 of Plaintiff's First Amended Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations set forth therein.

115)    By engaging in harassing conduct towards Ms. Manus because of her age, Defendant limited, segregated or classified her in a way that deprived her or tended to deprive her of employment opportunities in violation of 29 U.S.C. § 623(a)(2).

**ANSWER:**    Defendant states that Paragraph 115 of Plaintiff's First Amended Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations set forth therein.

116)    By engaging in harassing conduct towards Ms. Manus because of her age, Defendant limited, segregated or classified her in way that adversely affected her status as an employee in violation of 29 U.S.C. § 623(a)(2).

**ANSWER:**    Defendant states that Paragraph 116 of Plaintiff's First Amended Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations set forth therein.

117)    Ms. Manus's age was a motivating factor in Defendant's conduct towards her, including Defendant's managers' decision to engage in harassing conduct towards her.

**ANSWER:**    Defendant denies the allegations set forth in Paragraph 117 of Plaintiff's First Amended Complaint.

118)    Defendant's harassing conduct towards Ms. Manus created a hostile work environment in violation of the 29 U.S.C. § 623(a)(1).

**ANSWER:**   Defendant states that Paragraph 118 of the First Amended Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations set forth therein.

119)    As a result of Defendant's actions, Ms. Manus sustained lost past and future wages and benefits, damage to her career, emotional distress (including, without limitation, humiliation, embarrassment and loss of dignity), attorney fees, and related costs.

**ANSWER:**   Defendant denies the allegations set forth in Paragraph 119 of Plaintiff's First Amended Complaint.

120)    The actions of Defendant were intentional and/or done maliciously or with reckless indifference to Ms. Manus's rights.

**ANSWER:**   Defendant denies the allegations set forth in Paragraph 120 of Plaintiff's First Amended Complaint.

Defendant states that the remainder of Count III, of Plaintiff's First Amended Complaint, contains Plaintiff's request for relief to which no response is required.  To the extent a response is required, Defendant denies the allegations set forth therein and further denies that Plaintiff is entitled to any relief.

**Count IV**
**Retaliation In Violation Of The ADEA**

121)    Ms. Manus repleads the allegations contained in all paragraphs of this complaint, and incorporates them by reference as if fully set forth herein.

**ANSWER:**   Defendant incorporates by reference its answers to all preceding Paragraphs of Plaintiff's First Amended Complaint, as if fully set forth herein.

122)    On several occasions, Ms. Manus reported to Defendant practices which she believed to be unlawful because they were discriminatory based on her age.

**ANSWER:**    Defendant denies the allegations set forth in Paragraph 122 of Plaintiff's First Amended Complaint..

123)    By reporting to Defendant practices which she believed to be unlawful because they were discriminatory based on her age, Ms. Manus engaged in conduct protected by the ADEA.

**ANSWER:**    Defendant states that Paragraph 123 of the First Amended Complaint contains legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth therein.

124)    By denying Ms. Manus hours and/or shifts because she engaged in protected activity, Defendant discriminated against her in violation of 29 U.S.C. § 623(d).

**ANSWER:**    Defendant states that Paragraph 124 of the First Amended Complaint contains legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth therein.

125)    By discharging Ms. Manus because she engaged in protected activity, Defendant discriminated against her in violation of 29 U.S.C. § 623(d).

**ANSWER:**    Defendant states that Paragraph 125 of Plaintiff's First Amended Complaint contains legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations set forth therein.

126)    By engaging in harassing conduct towards Ms. Manus because she engaged in protected activity, Defendant discriminated against her in violation of 29 U.S.C. § 623(d).

**ANSWER:**    Defendant states that Paragraph 126 of the First Amended Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations set forth therein.

127)    Ms. Manus's protected activities were a motivating factor in Defendant's conduct towards her, including Defendant's managers' decisions to deny her hours and/or shifts, to engage in conduct which led to Ms. Manus's discharge, to discharge her, and to engage in harassing conduct towards her.

**ANSWER:**    Defendant denies the allegations set forth in Paragraph 127 of Plaintiff's First Amended Complaint.

128)    As a result of Defendant's actions, Ms. Manus sustained lost past and future wages and benefits, damage to her career, emotional distress (including, without limitation, humiliation, embarrassment and loss of dignity), attorney fees, and related costs.

**ANSWER:**    Defendant denies the allegations set forth in Paragraph 128 of Plaintiff's First Amended Complaint.

129)    The actions of the Defendant were intentional and/or done maliciously or with reckless indifference to the rights of the Ms. Manus.

**ANSWER:**    Defendant denies the allegations set forth in Paragraph 129 of Plaintiff's First Amended Complaint.

Defendant states that the remainder of Count IV, of Plaintiff's First Amended Complaint, contains Plaintiff's request for relief to which no response is required.  To the extent a response is required, Defendant denies the allegations set forth therein and further denies that Plaintiff is entitled to any relief.

## Count V
## Retaliatory Termination In Violation Of Illinois Common Law

130)   Ms. Manus repleads the allegations contained in all paragraphs of this complaint, and incorporates them by reference as if fully set forth herein.

**ANSWER:**   Defendant incorporates by reference its answers to all preceding Paragraphs of Plaintiff's First Amended Complaint, as if fully set forth herein.

131)   Illinois public policy requires that employees be free from retaliation for attempting to exercise their rights to recover for work injuries under the Illinois Workers' Compensation Act.

**ANSWER:**   Defendant states that Paragraph 131 of Plaintiff's First Amended Complaint contains legal conclusions to which no response is required.  To the extent Paragraph 131 of Plaintiff's First Amended Complaint contains any allegations of wrongdoing, Defendant denies the allegations contained therein.

132)   Ms. Manus's attempt to exercise her rights under the Illinois Workers' Compensation Act was a motivating factor in Defendant's decision to discharge her.

**ANSWER:**   Defendant denies the allegations set forth in Paragraph 132 of Plaintiff's First Amended Complaint.

133)   As a result of the actions of the Defendant, as set forth above; Ms. Manus sustained lost past and future wages and benefits, damage to her career, emotional distress (inducting, without limitation, humiliation, embarrassment and loss of dignity), attorney fees, and related costs.

**ANSWER:**   Defendant denies the allegations set forth in Paragraph 133 of Plaintiff's First Amended Complaint.

134)    The actions of the Defendant were intentional and/or done maliciously or with reckless indifference to the rights of the Ms. Manus.

**ANSWER:**    Defendant denies the allegations set forth in Paragraph 134 of Plaintiff's First Amended Complaint.

Defendant states that the remainder of Count V, of Plaintiff's First Amended Complaint, contains Plaintiff's request for relief to which no response is required.  To the extent a response is required, Defendant denies the allegations set forth therein and further denies that Plaintiff is entitled to any relief.

### Relief Sought - All Counts

135)    Ms. Manus repleads the allegations contained in all paragraphs of this complaint, and incorporates them by reference as if fully set forth herein.

**ANSWER:**    Defendant incorporates by reference its answers to all preceding Paragraphs of Plaintiff's First Amended Complaint, as if fully set forth herein.

136)    The Court has the power to award any legal or equitable relief that will effectuate the purpose of the ADEA.

**ANSWER:**    Defendant states that Paragraph 136 of Plaintiff's First Amended Complaint contains legal conclusions and Plaintiff's request for relief to which no response is required.  To the extent a response is required, Defendant admits that the ADEA provides this Court with the authority to issue legal and equitable relief, but denies that Plaintiff is entitled to any such relief.

137)    This Court also has the power to award any common law contractual and/or tort remedies available under Illinois common law.

**ANSWER:**    Defendant states that Paragraph 137 of Plaintiff's First Amended Complaint contains legal conclusions and Plaintiff's request for relief to which no response is required.  To the extent a response is required, Defendant admits that the Illinois common law provides this Court with the authority to issue remedies, but denies that Plaintiff is entitled to any such relief.

Defendant states that the remainder of Plaintiff's First Amended Complaint contains Plaintiff's request for relief to which no response is required.  To the extent a response is required, Defendant denies the allegations set forth therein and further denies that Plaintiff is entitled to any relief.

## NOTICE OF AFFIRMATIVE DEFENSES

1.    Without prejudice to its denials and other statements of its pleadings, Defendant alleges that Plaintiff's First Amended Complaint fails to state claims upon which relief may be granted.

2.    Without prejudice to its denials and other statements of its pleadings, Defendant alleges that Plaintiff's injuries or damages, if any, were not proximately caused by the acts or omissions of Defendant.

3.    Without prejudice to its denials and other statements of its pleadings, Defendant alleges that Plaintiff's claims are barred to the extent that Defendant was not Plaintiff's "employer" for purposes of the ADEA and Illinois Common Law.

4.    Without prejudice to its denials and other statements of its pleadings, Defendant alleges that Plaintiff's claims are barred to the extent that they allege violations occurring more than 300 days prior to the filing of Plaintiff's Charge of Discrimination.

5.     Without prejudice to its denials and other statements of its pleadings, Defendant alleges that Plaintiff's claims are barred to the extent that they are beyond the scope of her Equal Employment Opportunity Charge of Discrimination.

6.     Without prejudice to its denials and other statements of its pleadings, Defendant alleges that Plaintiff's claims are barred by her failure to exhaust the applicable federal, state, and local administrative remedies before initiating the instant lawsuit and/or filing her lawsuit within the requisite 90 day period.

7.     Without prejudice to its denials and other statements of its pleadings, Defendant alleges that Plaintiff's First Amended Complaint and the allegations therein fail to set forth facts sufficient to constitute a claim for exemplary or punitive damages under federal and/or Illinois law.

8.     Without prejudice to its denials and other statements of its pleadings, Defendant alleges that any recovery on Plaintiff's First Amended Complaint, or any purported cause of action alleged therein, is barred in whole or in part by Plaintiff's failure to mitigate her damages and obtain subsequent employment in a timely manner.

9.     Without prejudice to its denials and other statements of its pleadings, Defendant alleges that Plaintiff's claim for back/front pay damages is barred to the extent that she has been unable to work since her separation.

Defendant reserves the right to plead any additional Affirmative Defenses as they become known or available during the pendency of this litigation.

## <u>CONCLUSION</u>

WHEREFORE, Defendant, Sage Hospitality Resources, LLC, denies that Plaintiff is entitled to judgment in any sum whatsoever, and respectfully requests that this Court enter judgment in favor of Defendant with costs and reasonable attorney's fees assessed against Plaintiff, as well as such other and further relief which the Court deems just and appropriate.

Respectfully submitted,

By:     /s/ Kevin S. Simon
        One of the Attorneys for Defendant,
        Sage Hospitality Resources, LLC

Kevin S. Simon
Steve A. Miller
FISHER & PHILLIPS LLP
140 South Dearborn
Suite 1000
Chicago, IL 60603
Telephone: (312) 346-8061
Facsimile:  (312) 346-3179

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney of FISHER & PHILLIPS LLP, certifies as follows:

That on July 22, 2008, I electronically filed the foregoing **DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND NOTICE OF AFFIRMATIVE DEFENSES** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

J. Bryan Wood
The Law Office of J. Bryan Wood
53 West Jackson Boulevard
Suite 660
Chicago, Illinois  60604

thereby serving the same upon him.

/s/   Kevin S. Simon

Chicago 93072.1